**IT IS ORDERED as set forth below:**

**Date: March 31, 2026**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 25-55428-JWC |
| CARLIEMAR WHITE, III, | CHAPTER 7 |
| Debtor. | |
| | |
| REV.IO, LLC and BRENT MAROPIS, | |
| Plaintiffs, | ADVERSARY PROCEEDING NO. |
| v. | 25-5099-JWC |
| CARLIEMAR WHITE, III, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are cross-motions for summary judgment in this nondischargeability action. Plaintiffs Rev.io, LLC and Brent Maropis ask the Court

1

to find that a state court judgment they obtained by default against Defendant Carliemar White, III preclusively determines that the resulting debt constitutes willful and malicious injuries nondischargeable under 11 U.S.C. § 523(a)(6). Mr. White requests the opposite: that the Court find the state court judgment preclusively determines the debt does not constitute willful and malicious injuries and is discharged.

The specific motions before the Court are (1) Plaintiffs' Motion for Summary Judgment (Doc. No. 18) ("Plaintiffs' Motion") and (2) Defendant's Motion for Summary Judgment (Doc. No. 26) ("Mr. White's Motion," and together the "Motions").[1] The Court has carefully reviewed and considered both Motions, the supporting briefs, statements of facts, exhibits, responses, replies, and other documents filed by the Parties[2] and concludes that it will deny both Motions.

## I.  Jurisdiction

The Court has jurisdiction over this nondischargeability action pursuant to 28

---

[1] Mr. White was represented by counsel at the time he filed his Motion and all supporting papers, but the Court has learned that Mr. White's counsel was disbarred by order of the Supreme Court of Georgia dated January 21, 2026. The Court has not taken into consideration the disbarment for purposes of its ruling on the pending Motions because they were fully briefed prior to the disbarment, and the disbarment appears to be for matters unrelated to this case. Given the disbarment and the lack of any appearance by new counsel, it appears that Mr. White is now unrepresented in this case. The Court will enter a separate order scheduling a status conference approximately 30 days from the date of entry of this order and amending the existing scheduling order to provide Mr. White time to retain new counsel before a pretrial order is due. If Mr. White does not retain counsel by the status conference, he must be prepared to proceed to trial without counsel.

[2] In total the Parties filed 17 separate docket entries in support of and in opposition to their respective Motions. Those documents are found at docket entries 16-32. The Court does not list each document individually in this opinion but has considered each and cites individual documents where appropriate.

U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## II.   <u>Findings of Fact</u>

The material facts for purposes of summary judgment are largely undisputed.[3] Mr. White is a comedian who posts videos on social media in which he portrays a character named "Agent Ratliff." [Plaintiffs' SOF ¶¶ 1-2.] As Agent Ratliff, Mr. White visits businesses under the guise of being an employee of OCDA Official, LLC ("OCDA"), which is an actual entity owned by Mr. White. [*Id.* at ¶¶ 3-4.] Agent Ratliff—under the auspices of conducting a governmental investigation—embarrasses the businesses and their employees, and Mr. White posts videos of Agent Ratliff's visits on his various social media accounts for his own benefit. [*Id.* at ¶¶ 4-5.] Mr. White's social media accounts collectively have over 2 million followers. [*Id.* at ¶¶ 4-6.]

Mr. White, as Agent Ratliff, attempted to gain entry into the offices of Rev.io on July 16, 2024, by impersonating an affiliate of the United States Occupational Safety and Health Administration (OSHA). [Plaintiffs' SOF ¶ 7.] The visit led to an altercation between Mr. White and Mr. Maropis. [*Id.*] Mr. White recorded the visit and altercation and posted the video on several social media accounts (the "Video"). [*Id.* at ¶ 8.] The Video garnered more than 2 million views within a month. [*Id.* at ¶

---

[3] Plaintiffs filed a Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment (Doc. No. 18-2) ("Plaintiffs' SOF"), which the Court largely accepts as undisputed. Although Mr. White filed a Statement of Undisputed Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment (Doc. No. 25) ("Defendant's Counter-Statement" or "DCSF"), Defendant's Counter-Statement was untimely and failed to respond specifically to the enumerated facts in Plaintiffs' SOF. The Court, therefore, largely accepts Plaintiffs' SOF as true except where specifically noted.

9.] Plaintiffs submitted the Video with their Motion, which the Court reviewed.

On August 6, 2025, Plaintiffs filed a lawsuit against Mr. White and OCDA in the Superior Court of Fulton County, State of Georgia (the "State Court"), in Civil Action File No. 24CV009879 (the "State Court Action"). [Plaintiffs' SOF ¶ 10.] Plaintiffs asserted claims for assault and battery, intentional infliction of emotional distress, invasion of privacy, false light, misappropriation of likeness, and defamation (the "Tort Claims"). [*Id.*] Plaintiffs also filed a motion for temporary restraining order (TRO). The State Court conducted a hearing on the motion for TRO August 12, 2024, which Mr. White did not attend.[4] [*Id.* at ¶ 15.] The next day the State Court entered an order granting the TRO in part, enjoining Mr. White from having any further contact with Plaintiffs or publishing any further videos of Plaintiffs.[5] [*Id.* at ¶ 16.]

Plaintiffs filed an amended complaint September 11, 2024 (the "Amended Complaint"). [Plaintiffs' SOF ¶ 18.] Mr. Maropis asserted all five Tort Claims, whereas Rev.io asserted only three of the Tort Claims: false light, misappropriation of likeness, and defamation. The Amended Complaint asserted damages in an amount to be proven at trial and requested injunctive relief, attorney's fees pursuant to O.C.G.A. § 13-6-11, and injunctive relief under the Georgia Deceptive Trade Practices Act (the "GDTPA").

---

[4] Mr. White disputes in the Defendant's Counter Statement that either he or OCDA were ever served with any process or other motions filed in the State Court Action. Although the evidence offered by Plaintiffs relative to service is substantial, and Mr. White's denials were untimely, ultimately the question of service is not material to the Court's ruling on the Motions for summary judgment.

[5] The State Court initially denied Plaintiffs' request to remove the existing video from Mr. White's social media accounts.

4

The State Court conducted a second hearing September 13, 2024, on Plaintiffs' requests for a TRO, which the State Court granted by order entered the same day. That order enjoined Mr. White from any physical contact with Maropis or employees of Rev.io and enjoined any additional posting of the Video. [Plaintiffs' SOF ¶ 20.]

Mr. White and OCDA did not respond to the Amended Complaint, and the State Court entered default judgment October 23, 2024 (the "Liability Judgment"), against Mr. White and OCDA, jointly and severally, as to liability on all claims in the Amended Complaint. [Plaintiffs' SOF ¶¶ 22-23.] The Liability Judgment includes no findings of fact other than facts related to service of Mr. White and OCDA.

On November 21, 2024, the State Court, after an evidentiary hearing on damages, entered a Final Order Awarding Injunctive Relief and Damages against Mr. White and OCDA, jointly and severally (the "Final Judgment" and together with the "Liability Judgment," the "State Court Judgments"). [Plaintiffs' SOF ¶ 26.] The Final Judgment awarded Rev.io compensatory damages in the amount of $1,466,088.50 and attorneys' fees and expenses of litigation in the amount of $44,248.00, for a total of $1,510,336.50. [*Id.* at ¶ 27.] The Final Judgment awarded Mr. Maropis compensatory damages in the amount of $750,000.00. [*Id.* at ¶ 28.] The Final Judgment includes few factual findings related to the Tort Claims and no factual findings indicating how the State Court determined the amount of damages or any apportionment of damages between the Tort Claims.

On November 21, 2024, the State Court entered an order finding OCDA Official, LLC and Defendant in contempt of court for their "willful violation of the

Court's Interlocutory Injunction," and directing Defendant to "deposit the sum of $1,000.00 into the Registry of Superior Court by Friday, December 6, 2024 at 5:00 p.m." Mr. White paid $1,000 to the State Court December 13, 2024 to purge his contempt. No indication in the record shows that Plaintiffs were awarded any damages in connection with the contempt order. [Plaintiffs' SOF ¶¶ 29-30.]

Mr. White filed a chapter 7 bankruptcy in May, 2025, and Plaintiffs timely filed a complaint asserting that the debt under the State Court Judgments is not dischargeable under 11 U.S.C. § 523(a)(6).

## III.  Legal Analysis

### A. Standard of Review

Fed. R. Civ. P. 56(a), applicable here through Fed. R. Bankr. P. 7056, provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982). "All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (citing *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1369 (11th Cir. 1982)).

### B. Defendants' Motion Is Untimely and Asserts Invalid Res Judicata Defense

The Court first addresses Mr. White's Motion. As an initial matter, Mr. White

filed his Motion untimely, and it could be denied on that ground alone.[6] Considering

the merits of Mr. White's Motion, it mostly argues that the State Court Judgments

make no specific findings that Mr. White acted willfully and maliciously. Although

Mr. White is correct that the State Court Judgments make no such findings, the lack

of such findings is not preclusive to Plaintiffs' claims. Much of Mr. White's Motion

reads like a defense to Plaintiffs' Motion instead of an affirmative request for

summary judgment in his favor. To the extent Mr. White argues that he is entitled

to summary judgment because the State Court Judgments do not specifically find

willful and malicious injury, his argument is one of *res judicata*, or claim preclusion,

which "prevents litigation of all grounds for, or defenses to, recovery that were

previously available to the parties, regardless of whether they were asserted or

determined in the prior proceeding." *Brown v. Felson*, 442 U.S. 127, 131, 99 S.Ct.

2205, 2209 (1979). The Supreme Court rejected many years ago the application of *res

judicata* to certain nondischargeability claims like willful and malicious injury

because bankruptcy courts (or district courts) have exclusive jurisdiction to hear and

determine such claims. *Id.* To the extent Mr. White argues that he is entitled to

summary judgment based on the findings in the State Court Judgments, his

argument fails under *Brown v. Felson*. To the extent Mr. White's Motion otherwise

requests summary judgment based on the substance of Plaintiffs' claims, the Court

will also deny the Motion for the reasons discussed later in this opinion.

---

[6] Pursuant to the Report of Rule 26(f) Conference filed by the parties (Doc. No. 5), dispositive
motions were due October 20, 2025, and Mr. White filed his Motion November 15, 2025.

C. **Plaintiffs Assert Issue Preclusion**

Plaintiffs' primary argument is that no genuine issues of material fact remain as to Mr. White's liability for willful and malicious injury based on collateral estoppel or issue preclusion. "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (citing *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)).  Unlike *res judicata*, which prevents relitigation of all claims *available* in a previous action whether or not such claims were decided, collateral estoppel bars relitigation of specific issues that actually were decided in a previous action. It is well established that collateral estoppel applies in dischargeability proceedings. *Id.* (citing *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991)).

"If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *Id.* at 675-76 (citing *In re Touchstone*, 149 B.R. 721, 725 (Bankr. S.D. Fla. 1993)). "While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Id.* (citing *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir. 1987)). Because a Georgia state court rendered the State Court Judgments, this Court looks to Georgia preclusion law to

8

determine whether collateral estoppel bars relitigation of any issues in this case. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263-64 (11th Cir. 2011) (applying Georgia preclusion law when analyzing the effect of a Georgia state court judgment).

"Georgia law has not settled on a canonical list of elements to establish collateral estoppel." *Cmty. State Bank v. Strong*, 651 F.3d at 1264. Although the precise formulation of requirements can vary from case to case, a default judgment may be given preclusive effect under Georgia law if the following requirements are met:

> (1) identity of the parties is the same;
>
> (2) identity of the issues is the same;
>
> (3) actual and final litigation of the issue in question occurred;
>
> (4) the adjudication was essential to the earlier action; and
>
> (5) the parties had a full and fair opportunity to litigate the issues in
>
> question.[7]

*Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 922 (Bankr. N.D. Ga. 2010); *The Peoples Bank v. Abernathy (In re Abernathy)*, Ch. 7 Case No. 17-55926, Adv. No. 17-5170, 2019 WL 1489661, at *3 (Bankr. N.D. Ga. Apr. 1, 2019). A party seeking to establish collateral estoppel must demonstrate all five elements. *See Cmty. State Bank v. Strong*, 651 F.3d at 1264; *Zurich Am. Ins. Co. v. Hardin*, No. 1:20-cv-1594, 2021 WL

---

[7] Compare to the list "distilled" by the Eleventh Circuit in *Cmty. State Bank v. Strong*, 651 F.3d at 1264: "(1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction."

872326, at *3 (N.D. Ga. Mar. 9, 2021) (party who claims judgment has preclusive effect must prove elements of issue preclusion).

The process of analyzing whether a state court judgment is preclusive to a nondischargeability claim is no easy task. That is particularly true in cases involving claims for willful and malicious injury based on judgments awarding damages on various state law claims that often do not require explicit findings of willfulness *and* maliciousness. Courts generally "should look to the entire record to determine the wrongful character of the act, for even the pleadings are not necessarily conclusive." 4 COLLIER ON BANKRUPTCY ¶ 523.12[5] (Richard Levin & Henry J. Sommer eds., 16th ed.). The bankruptcy court's task is often easier in cases where the court rendering judgment makes detailed factual findings, and the bankruptcy court will generally focus on those specific findings to determine if the issues of willfulness and maliciousness were actually and necessarily decided. *Id.* If a trial or other evidentiary proceedings are held, transcripts and jury instructions can be useful to determine the issue. *Id.* The bankruptcy court's task is often more difficult in cases, such as this one, in which the judgment is obtained by default, contains few findings, and awards a lump sum of damages on multiple claims without explaining how damages were determined or apportioned to any specific claim. In such cases, collateral estoppel is still available if

> (1) the bankruptcy court can determine with precision from a review of the pleadings and the record what issues were actually litigated and determined in the prior proceeding and the legal standards employed under state law in the prior proceeding [are] congruent with the standards under the applicable provision of 11 U.S.C. § [523(a)(6)].

10

*Viener v. Jacobs (In re Jacobs)*, 381 B.R. 128, 144 n.6 (Bankr. E.D. Penn. 2008). "In some cases, the analysis may be a purely legal one—comparing the necessary elements of the claim on which judgment was entered with the elements of the bankruptcy nondischargeability claim." 4 COLLIER ON BANKRUPTCY ¶ 523.06. With these principles in mind, the Court applies the elements of issue preclusion to Plaintiffs' willful and malicious injury claims.

### 1.  Identity of the Parties Is the Same

The first element is clearly met as the Plaintiffs and Mr. White were both parties to the State Court Action and are parties to this adversary proceeding. The fact that OCDA was also a party to the State Court Action does not alter the result because the claims at issue in the State Court Action were against both Mr. White and OCDA, and the Final Judgment imposed joint and several liability.

### 2.  Identity of Issues

Identity of the issues is often the decisive element in collateral estoppel cases and often the most difficult to discern. Generally speaking, an identity of issues exists if the issues presented are the same, such that the issues would be decided "under identical governing law." *Cmty. State Bank v. Strong*, 651 F.3d at 1267. Issue preclusion, however, does not require an identity of claims, only "issues." *See Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486, 696 S.E.2d 667, 669 (2010) (quoting *Karan, Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262 (Ga. 2006)). If, for example, the trial court makes specific findings of facts that are the same facts to be considered in determining nondischargeability, a bankruptcy court may find an identity of issues even if the claims at issue in the previous case are not

11

identical to the nondischargeability claim. *See Tenet South Fulton, Inc. v. Demps (In re Demps)*, 506 B.R. 163, 171 (Bankr. N.D. Ga. 2014).

Here, the Court agrees with Mr. White that the State Court Judgments make no meaningful factual findings relative to a willful and malicious injury. The only findings in the State Court Judgments that arguably relate to willfulness or maliciousness are that Mr. White "impersonat[ed] an affiliate of [OSHA]" during the Video, and that Mr. White "has made a routine out of similar antics on other unsuspecting places of business—also under the auspices of conducting a government investigation—by embarrassing the business and its employees, and then publicizing the interaction on social media for Mr. White's own benefit." Put simply, the Court does not find these findings sufficient to establish a willful and malicious injury on the Tort Claims, and the Court cannot conclude, based on any findings of fact by the State Court, that the State Court determined the issues necessary to conclude that Plaintiffs' claims are for willful and malicious injury. But that does not end the inquiry, and Plaintiffs do not argue that the State Court Judgments contain any such findings.

When a judgment contains no meaningful factual findings, as is often the case with default judgments, bankruptcy courts look to whether the elements of the nondischargeable claim are sufficiently identical to the elements of the underlying claims asserted in the previous litigation. *Lowery*, 440 B.R. at 924 (comparing elements of claim for fraud under § 523(a)(2) and fraud under Georgia law); *Jedlicka v. Neri (In re Neri)*, Case No. 17-53022-BEM, Adv. Pro. No. 17-5125-BEM, 2018 WL

12

333819, *7 (Bankr. N.D. Ga. Jan. 8, 2018) (comparing elements of fraud, conversion, breach of contract, punitive damages, and attorney's fees under Georgia law to elements of claims under § 523(a)(2), (4), and (6) where state court judgment contained no findings on which judgment was based); *In re Whelan*, 236 B.R. 495, 501 (Bankr. N.D. Ga. 1999) (finding elements of claims are not identical under § 523(a)(4), § 523(a)(6) and Georgia law); *Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 705 (N.D. Ga. 2000) (affirming as to § 523(a)(4) and § 523(a)(6) claims). The case law often requires staunch precision. *See Mills v. Ellerbee (In re Ellerbee)*, 177 B.R. 731, 737 (Bankr. N.D. Ga. 1995) ("The definition of 'actual malice' [under Georgia punitive damages statute] is not the mirror image of the definition of "willful and malicious" in section 523(a)(6). . . . Consequently, collateral estoppel is no bar to further litigation concerning whether the debt is for a willful and malicious injury."). Thus, the Court must compare the necessary elements of a willful and malicious injury under § 523(a)(6) with the necessary elements of the Tort Claims.

      i.   <u>Willful and Malicious Injury</u>

Willful and malicious injury under § 523(a)(6) requires the injury to be both willful and malicious. Finding willfulness without maliciousness or *vice versa* simply does not suffice. "A debtor is responsible for a willful injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *SE Prop. Holdings, LLC v. Gaddy* (*In re Gaddy*), 977 F.3d 1051, 1058 (11th Cir. 2020) (citations omitted). For an injury to be willful under section 523(a)(6), the debtor must intend both the injury and the act that led to the injury. *Watson v. Bradsher (In re Watson)*, 147 F.4th 1330, 1337 (11th Cir. 2025).

13

Section 523(a)(6) covers "only acts done with the actual intent to cause injury," not "acts, done intentionally, that cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (footnote omitted).

A "malicious" injury in section 523(a)(6) is one that is "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Watson*, 147 F.4th 1339 (quoting *Maxfield v. Jennings* (*In re Jennings*), 670 F.3d 1329, 1334 (11th Cir. 2012). "A showing of specific intent to harm another is *not* necessary.'" *Id*. "Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice." *Id*. (quoting *Lee v. Ikner* (*In re Ikner*), 883 F.2d 986, 991 (11th Cir. 1989)).

ii.  Assault and Battery

Plaintiffs argue that "it is well settled that assault and battery are intentional torts." *Soundara v. AMB Sports & Ent.*, 371 Ga. App. 285, 293, 899 S.E.2d 428, 434 (2024). This may be true, but, as the Eleventh Circuit recently stated, "liability for an intentional tort does not alone establish nondischargeability—the tort must involve an intent to cause injury." *In re Watson*, 147 F.4th 1337. "[W]hen a debt for an intentional tort does not involve an intent to cause injury, it may be dischargeable." *Id*. Plaintiffs do not discuss whether assault and battery under Georgia law involves an intent to cause injury, nor do they discuss the issue of malice. Instead, they cite a case for the general proposition that "[i]njury resulting from trespassory intentional torts . . . generally qualify under the 'willful and malicious injury.'" *In re Woolley*, 288 B.R. 294, 301 (Bankr. S.D. Ga. 2001). Indeed, numerous authorities and cases have

14

found that assault and battery "generally" qualify as willful and malicious injury,[8] and it might be easy to conclude that a claim for assault and battery shares an identity of issues with a claim for willful and malicious injury based on a cursory review of existing authorities.

The Court's review of the cases, however, shows a more nuanced analysis than simple citation to a general rule. For example, many cases and authorities stating the general rule qualify it with statements such as, "[o]f course, when liability for assault may be imposed without proof of any element of malice, the liability will not necessarily be excepted from discharge." 4 COLLIER ON BANKRUPTCY ¶ 523.12[4].[9] Courts do not always apply the "general" rule if the facts of the case demand otherwise. *See Gray v. Gray (In re Gray)*, 322 B.R. 682, 691 (Bankr. N.D. Ala. 2005) (judgment for assault and battery not preclusive to willful and malicious injury claim where trial court's jury instructions explicitly stated intent to injure was not essential element of assault and battery). Moreover, the Court's review of cases supporting the general rule typically involve detailed records from the previous case, detailed discussion of the facts supporting the claim for assault and battery, and serious injury such as sexual abuse, wrongful death, gunshots, stabbings, or other serious bodily

---

[8] 4 COLLIER ON BANKRUPTCY ¶ 523.12[4]; *Smith v. Pitner (In re Pitner)*, 696 F.2d 447, 449 (6th Cir. 1982) (citing COLLIER); *Gunter v. Morton (In re Morton)*, 100 B.R. 607 (Bankr. N.D. Ga. 1989); *Blackman v. Gaebler (In re Gaebler)*, 88 B.R. 62 (E.D. Penn. 1988); *Oswald v. Gonsor (In re Gonsor)*, 95 B.R. 123 (Bankr. D.S.D. 1988).

[9] *See also In re Pitner*, 696 F.2d at 448 (citing district court analysis: "Although ill-will or malevolence may not be an essential element of all assault and battery cases it was an unavoidable element in this particular assault and battery" involving intentional shooting of victim); *In re Rice*, 18 B.R. 562, 564 (Bankr. N.D. Ala. 1982) ("a civil action for assault and battery may lie without a specific intent to harm in some jurisdictions").

injury that allow the courts to infer malicious intent from the seriousness of the conduct.[10]

This case contains no meaningful findings from the State Court relative to assault and battery. The only finding in the State Court Judgments relative to assault and battery is that "a physical altercation between Mr. White and Mr. Maropis occurred." The only allegation supporting a claim for assault and battery in the Amended Complaint is the bare statement that "White then assaulted and battered Maropis when he was instructed to leave by Maropis." Nothing from the record below demonstrates that Mr. Maropis suffered a serious bodily injury or that Mr. White acted with malice. It is possible the evidence from the damages hearing in the State Court would shed more light on the issue, but the Court has not been provided with any such evidence. Although the Court might agree that assault and battery "generally" satisfies the requirements of willful and malicious injury in certain cases of serious bodily injury, the Court cannot find that the record in the State Court Action demonstrates that the State Court determined the issue of willful and malicious injury in connection with assault and battery.

iii.    Intentional Infliction of Emotional Distress (IIED)

The elements for IIED are (1) the conduct must be intentional *or reckless*; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection

---

[10] *See In re Pitner*, 696 F.2d 447 (debtor intentionally shot creditor allowing inference of malice); *In re Rice*, 18 B.R. 562, 564 (Bankr. N.D. Ala. 1982) ("[m]alice may be inferred from the use of a deadly weapon" where creditor accidentally shot by debtor during barroom altercation); *In re Morton*, 100 B.R. 607 (debtor intentionally shot creditor); *In re Woolley*, 288 B.R. 294 (debtor sexually abused creditor); *In re Gaebler*, 88 B.R. 62 (debtor shot creditor 5 times); *In re Gonsor*, 95 B.R. 123 (debtor broke creditor's jaw).

16

between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe." *Standard v. Falstad*, 334 Ga. App. 444, 448, 779 S.E.2d 682, 686 (2015) (emphasis added). Although Plaintiffs cite to a previous decision of this Court finding that "the elements required to prove . . . intentional infliction of emotional distress under Georgia law closely resemble the elements needed to establish a willful and malicious injury for purposes of section 523(a)(6)," *In re Turnage*, 460 B.R. 341, 346 (Bankr. N.D. Ga. 2011), the Court respectfully disagrees. As the Supreme Court made clear, and the Eleventh Circuit recently reiterated, reckless conduct does not satisfy the requirements for willful injury under § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."); *Watson v. Bradsher (In re Watson)*, 147 F.4th 1330, 1337 (11th Cir. 2025).

Neither the State Court Judgments nor the Amended Complaint contain any allegations or factual findings of any kind relative to a claim for intentional infliction of emotion distress or whether Mr. White's conduct was intentional or merely reckless. Because a claim for IIED under Georgia can be found on either intentional or reckless conduct, and the Court cannot tell under which basis the State Court entered judgment on the IIED claim, it is possible the State Court Judgments were based on Mr. White's conduct being reckless and not intentional, and no identity of issues exists. *See Erickson v. Bundy (In re Bundy)*, 673 B.R. 492, 512 (Bankr. D. Utah

17

2025).[11]

    iv.    <u>Invasion of Privacy/False Light</u>

"To establish a claim of false light [invasion of privacy], a plaintiff must show the existence of false publicity that depicts the plaintiff as something or someone which he is not. Next, the plaintiff must demonstrate that the false light in which he was placed would be highly offensive to a reasonable person." *Williams v. Cobb Cnty. Farm Bureau, Inc.*, 312 Ga. App. 350, 353, 718 S.E.2d 540, 543 (2011). Plaintiffs argue, without citing any authority, that false light requires a "knowing publication of false information which aligns with the willful element of section 523(a)(6), while the "highly offensive" standard establishes malicious conduct." Plaintiffs' Brief, B(3), p. 13. However, the Court's research of Georgia law shows that a false light claim may be established by showing a reckless publication of false information. *Smith v. Stewart*, 291 Ga. App. 86, 100, 660 S.E.2d 822, 834 (2008) ("In order to sustain a false light invasion of privacy claim, a plaintiff must show that the defendant knowingly or recklessly published falsehoods about him or her and, as a result, placed him or her in a false light which would be highly offensive to a reasonable person.). Further, other courts, albeit not under Georgia law, have found that claims for false light do not necessarily align with the elements of willful and malicious injury. *See In re Bundy*, 673 B.R. at 511 (false light under Idaho law may involve non-malicious falsehood); *Vista Money, LLC v. Stevenson (In re Stevenson)*, Case No. 8:20-bk-06059-

---

[11] Even if the Court were to conclude that IIED and assault and battery share an identity of issues, those two claims would apply only to the claims of Mr. Maropis and not Rev.io because Rev.io, as an artificial entity, did not and could not assert claims for assault and battery or IIED in the State Court Action.

RCT; Adv. No. 8:20-ap-00609-RCT, 2022 WL 1537457, *9 (Bankr. M.D. Fla. April 26, 2022). Without any findings in the State Court Judgments suggesting Mr. White intentionally published false information, the Court concludes no identity of issues exists with respect to the false light/invasion of privacy claim.

   v.   Defamation

The four elements of the tort of defamation under Georgia law are: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Eason v. Marine Terminals Corp.*, 309 Ga. App. 669, 672, 710 S.E.2d 867, 870 (Ga. App. 2011). The Court concludes that the elements of defamation do not share an identity of issues with willful and malicious injury. The elements of defamation clearly allow for negligent conduct, not intentional conduct, and numerous cases support this conclusion. *See, e.g., Kanaga v. Landon (In re Landon)*, 657 B.R. 128 (Bankr. N.D. Okla. 2024) (citing cases) ("Mere reckless disregard for the truth or falsity of the statement . . . is not a willful and malicious injury for purposes of § 523(a)(6)");[12] *In re Stevenson*, 2022 WL 1537457, *6 (finding defamatory statements not willful and malicious but reckless); *Materia v. Pereira (In re Pereira)*, 44 B.R. 248, 252 (Bank. D. Mass. 1988) (negligent or reckless false statement not willful and malicious).

---

[12] Although Plaintiffs cite to *Landon* in support of their position, the Court reads the case to support the opposite conclusion.

19

Plaintiffs argue that the content of the Video establishes that Mr. White's defamatory statements were defamation *per se* and that he was substantially certain were false,[13] but nothing from the record in the State Court Action establishes either of those allegations. Plaintiffs are asking the Court to make its own determination of those issues instead of relying on what was necessarily decided in the State Court Action. Accordingly, no identity of issues exists between the defamation claim and the willful and malicious injury claim.

### vi. Appropriation of Likeness

"[A]n appropriation of likeness claim in Georgia consists of the following elements: '[1] the appropriation of another's name and likeness, whether such likeness be a photograph or [other reproduction of the person's likeness], [2] without consent[, and] [3] for the financial gain of the appropriator.'" *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 752, 740 S.E.2d 622, 626 (2013) (quoting *Martin Luther King, Jr., Ctr. For Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135, 143, 296 S.E.2d 697, 703 (1982)). Georgia law is clear that an appropriation of likeness claim requires an intentional and knowing use of a person's likeness. *Tana v. Dantanna's*, 611 F.3d 767, 783 (11th Cir. 2010) ("An appropriation of likeness without an intent to use the likeness for one's benefit fails to meet the very definition of the tort itself."); *Thiede v. Sharper Impressions Painting, Co.*, Civil Action No. 1:22-cv-01838-SDG, 2025 WL

---

[13] Plaintiffs do not explain what defamation *per se* is or why such a characterization is relevant to the question of willful and malicious injury. Plaintiffs cite to *In re Landon*, which discusses defamation *per se* under Massachusetts law, but the case rejects the position that defamation *per se* establishes willfulness for purposes of § 523(a)(6). *In re Landon*, 657 B.R. at 144 ("When faced with a state court finding of defamation *per se*, a bankruptcy court must still find *subjective knowledge* of falsity by the debtor to meet the threshold of § 523(a)(6)").

20

964037 *2 (N.D. Ga. March 31, 2025) ("an appropriation of likeness claim requires proof that the defendant's use of the plaintiff's likeness was knowing or intentional" and citing cases). Further, "the interest protected in an appropriation case is in the plaintiff's exclusive use of his or her name and likeness as an inherent 'aspect of his [or her] *identity*.'" *Bullard*, 292 Ga. at 752, 740 S.E.2d at 626. The Court is satisfied that an appropriation of likeness claim requires an intent to cause injury for purposes of establishing a willful injury under § 523(a)(6).

Maliciousness, however, is not as clear. Plaintiffs argue that maliciousness is satisfied because an appropriation of likeness requires "the exploitation of another person solely for commercial benefit." Plaintiffs' Brief, B(4), p. 13. Plaintiffs appear to be correct that the appropriation must be solely for commercial benefit:

> No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter, and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right to privacy is invaded.

*Toffolini v. LFP Publishing Grp. LLC*, 572 F.3d 1201, 1207 (11th Cir. 2009) (citing Restatement (Second) of Torts § 652C cmt. d (1977)). Further, Georgia law recognizes a "newsworthiness" exception, and the Eleventh Circuit has concluded that "where a publisher may be precluded by the right of publicity from publishing one's image for purely financial gain, as in an advertisement, where the publication is newsworthy, the right of publicity gives way to freedom of the press." *Id.* at 1208. In deciding whether an appropriation is newsworthy, "it is appropriate for a court to consider whether the public interest aspect of the publication is merely incidental to its

21

commercial purpose." *Id.* at 1209 (citing *Titan Sports, Inc. v. Comics World Corp.,* 870 F.2d 85, 87–88 (2d Cir.1989). Thus, for the State Court to grant a claim for appropriation of likeness, it must have determined that the appropriation was solely for commercial benefit, or at least that the commercial purpose was not merely incidental to some public interest. The question nonetheless remains, does the requirement that the appropriation be for a commercial purpose make it malicious for purpose of § 523(a)(6)?

The Court has found few cases, whether under Georgia law or otherwise, discussing the interplay between willful and malicious injury and appropriation of likeness. The closest case the Court found is a dissenting opinion in *Fox v. Karlin (In re Karlin),* 112 B.R. 319 (B.A.P. 9th Cir. 1989). In *Karlin,* a plastic surgeon sent before-and-after photos of a patient to a publicist, who in turn sent the photos to a trade magazine for publication. Despite the patient's signature on a pre-surgery consent form agreeing to allow the plastic surgeon to use the photos for "any professional purpose," the plastic surgeon subsequently asked the patient to use the photos in the publication, and the patient declined permission. The plastic surgeon informed the publicist, which informed the trade magazine, which agreed not to publish the photos. The trade magazine, however, mistakenly published the photos. The patient asserted a willful and malicious injury claim against the surgeon after he filed bankruptcy.

After trial, the bankruptcy court determined the claim was one of negligence and not a willful and malicious injury. The bankruptcy appellate panel upheld the

22

bankruptcy court's ruling, finding that the consent form and the efforts to stop publication supported a finding of no willful and malicious injury. The majority opinion does not discuss the tort of appropriation of likeness. The dissent, however, argues that the surgeon was responsible for a willful and malicious injury because he intentionally sent the photos to the publicist in violation of Cal. Civ. Code §3344, the elements of which are similar to the elements of an appropriation of likeness claim under Georgia law.

Given the requirements under Georgia law that an appropriation of likeness must be for commercial benefit instead of serving some public interest, the Court agrees with the dissenting opinion in *Karlin*, and finds that an appropriation of likeness inherently includes a finding that the debtor's actions were "wrongful and without just cause." Accordingly, the Court finds that an appropriation of likeness claim shares an identity of issues with willful and malicious injury.

In summary, the Court concludes only one Tort Claim, appropriation of likeness, shares an identity of issues with willful and malicious injury. Each of the other claims could be based on negligent, reckless, or non-malicious conduct. It is important here to note that the Court is not finding that Mr. White did not cause willful and malicious injury under any of the Tort Claims, as each of the Tort Claims could be based on such conduct. The Court simply finds that the record of the State Court, and the elements of the underlying Tort Claims, do not preclusively establish that his conduct was willful and malicious with respect to the Tort Claims other than appropriation of likeness. For that reason the Court will deny the Plaintiffs' Motion

23

on the Tort Claims of assault and battery, IIED, invasion of privacy, and defamation.

### 3. **Essentiality of Adjudication**

The Court will also deny Plaintiffs' Motion on the appropriation of likeness claim because the Court cannot tell whether that claim was essential to the Final Judgment. An issue is essential if it "necessarily had to be decided in order for the previous judgment to have been rendered." *Allen v. Morrow (In re Morrow)*, 508 B.R. 514, 522 (Bankr. N.D. Ga. 2014) (quoting *Waldroup v. Greene Co. Hosp. Auth.*, 265 Ga. 864, 866, 463 S.E.2d 5, 7 (1995)). If a judgment "could be supported by two or more grounds, and it does not specify the grounds on which it rests," a court should not give the judgment preclusive effect. *Morrow*, 508 B.R. at 522. This requirement goes to both liability and damages. *See White v. Elliot (In re Elliott)*, Ch. 7 Case No. 16-57911, Adv. No. 16-05173, 2017 WL 2062873, at *3 (Bankr. N.D. Ga. May 12, 2017).

In *Elliott*, the bankruptcy court considered a state court judgment ordering "that Plaintiff have Judgment against Defendant . . ., individually, on all theories set forth in Plaintiff's Complaint in the total sum of Four Hundred Twenty-Three Thousand, Eight Hundred Fifty–One and 04/100 Dollars ($423,851.04)." *Elliott*, 2017 WL 2062873, at *1. The state court judgment included no findings of fact. *Id.* at *1. The bankruptcy court declined to apply collateral estoppel to the state court judgment because the state court judgment was ambiguous as to whether any damages were "attributable to fraud" or a breach of contract. *Id.* at *3. Thus, the bankruptcy court could not discern whether the fraud issue was essential to the state court judgment.

24

*Id.* at \*3; *see also Ragy*, 2016 WL 2935610, at \*3 (court declined to give state court judgment preclusive effect when default judgment did not specify whether it was based on plaintiff's fraud or breach of contract claim); *Hit-Em-Hard Corp. v. Lewis (In re Lewis)*, Ch. 7 Case No. 12-58938, Adv. No. 12-5577, 2016 WL 1426929 (Bankr. N.D. Ga. Apr. 11, 2016) (declining to apply collateral estoppel when plaintiff pled "multiple theories of recovery and the Superior Court's Default Judgment and Final Judgment did not make any specific findings of fact or conclusions of law" so court could not find any one theory of recovery was essential to judgment); s*ee also In re Lowery*, 440 B.R. at 923 ("The Court must apply collateral estoppel separately to the liability and damages portion of an order and may give preclusive effect to either, both or neither.").

The Final Judgment makes no findings relative to any of the damages awarded, and the Court cannot tell if any of the awarded damages were on the appropriation of likeness claim or the other four Tort Claims that do not share an identity of interest with willful and malicious injury. Accordingly, the Court will deny Plaintiffs' Motion on grounds of issue preclusion.

### D. Summary Judgment Independent of Issue Preclusion

Although the bulk of both Motions focus on the preclusive effect of the State Court Judgments, both Motions appear to seek summary judgment on the independent basis that the undisputed facts establish (or do not establish) a willful and malicious injury.[14] Put simply, the Court disagrees with both parties and finds

---

[14] Plaintiffs' Motion seems to argue that summary judgment is appropriate independently of issue preclusion in Section II of its brief, but both parts of that section lead with the assertion

25

material factual issues remain in dispute relative to whether Mr. White's conduct was willful and malicious. Although Plaintiffs make strong arguments that Mr. White was at least substantially certain that his conduct would cause the injuries for which the Final Judgment was awarded and that his conduct is wrongful and without just cause, the Court at summary judgment is required to construe the facts in the light most favorable to the nonmoving party, and the Court cannot make such a determination based solely on the content of the Video and the apparent fact that Mr. White routinely makes these type of videos for commercial gain. Mr. White asserts, albeit in a late-filed response, that he made the Video for comedic content and did not intend to cause the injuries for which the Final Judgment was awarded. Although the Court does not agree that Mr. White can absolve himself by saying the Video was for comedic purposes, whether his conduct was merely reckless or intentional is a material factual issue in dispute that must be decided at trial.

## IV.    Conclusion

Because neither Plaintiffs nor Mr. White have established that the State Court Judgments are entitled to preclusive effect in this adversary proceeding, or that they are otherwise entitled to summary judgment,

**IT IS ORDERED** that the Motions are **DENIED**.

The Clerk is directed to serve a copy of this Order on all parties and counsel of record in this adversary proceeding.

**END OF DOCUMENT**

---

that it is the Final Judgment that establishes both willfulness and maliciousness.

26